NOTICE
Decision filed 05/21/21. The text of this decision may be changed or corrected prior to the filing of a Petiion for Rehearing or the disposition of the same.

2021 IL App (5th) 200257

NO. 5-20-0257

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE VILLAGE OF NEW ATHENS, an Illinois Municipal Corporation, | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-LM-2190 |
| ERVIN F. SMITH, | ) ) | Honorable Kevin T. Hoerner, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court, with opinion.
Justices Welch and Vaughan concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant, Ervin F. Smith, appeals the August 3, 2020, order of the circuit court of St. Clair County that granted the motion for summary judgment filed by the plaintiff, the Village of New Athens (Village), as to its complaint for forcible entry and detainer, and awarded the Village $148,680.30 in money damages. For the following reasons, we affirm the order but modify the money damages award to $50,000.

¶ 2                                    I. BACKGROUND

¶ 3    On November 21, 2017, the Village filed a complaint for forcible entry and detainer against Smith in the circuit court of St. Clair County on the basis that Smith "failed and refused to pay rent and continues to fail and refuse to pay rent *** in the total amount of $23,802.40." The Village sought possession of the property as well as money damages. Although there was no affidavit

1

regarding damages sought attached to the complaint, the case was docketed as an "LM" case. On January 16, 2018, the Village obtained leave of court to file a first amended complaint, which it filed on February 9, 2018. In its first amended complaint, the Village requested possession of the property, as well as:

> "the sum of $23,802.40, being rents up until the time of notice of default; for reasonable sums for rent incurred for the period of time in which *** Smith improperly withheld possession of the premises; for an accounting of all funds received by Smith for the lease of camping spots [on the subject premises] during the period in which he improperly withheld possession; for an [o]rder that such rents be paid to the Village, and for all costs and attorney[ ] fees reasonably expended by the [Village] in this action."

However, the Village did not attach an affidavit specifying whether the total of money damages it sought from Smith did or did not exceed $50,000 to the complaint or the amended complaint. See Ill. S. Ct. R. 222(b) (eff. Jan. 1, 2011).

¶ 4       On March 12, 2018, Smith filed an answer, affirmative defenses, and a counterclaim to the Village's first amended complaint. Smith's counterclaim alleged that, prior to the time that Smith and the Village entered into the lease that is the subject of the Village's first amended complaint, the Village entered into a memorandum of understanding (MOU) with the State of Illinois in 1988. The MOU granted the Village a large piece of property, located on the Kaskaskia River, which included the subject premises, and required the Village to use the money received for the use of the property for the benefit of the property. According to the counterclaim, Smith is an intended third-party beneficiary of that MOU, and the Village breached the terms of the MOU by not using his rent payments for the benefit of the property and sought a recovery of those payments.

¶ 5       On September 30, 2019, the Village filed a motion for partial summary judgment, seeking a finding that Smith had breached his lease with the Village. In support of the motion for partial

summary judgment, the Village attached, *inter alia*, Smith's testimony in a prior proceeding, dated October 11, 2017, that he had no reason to believe that a statement from the Village, that lease payments were "23,000-plus in arrears," was inaccurate. Also on September 30, 2019, the Village filed a motion to strike or sever Smith's counterclaim.

¶ 6    On October 9, 2019, the Village filed another affidavit in support of its motion for partial summary judgment. This affidavit, from the Village clerk, states that in, December 2015, when the Village first gave Smith a notice of default, payments on the lease in question were "in excess of 16 months in arrears," for a total of $23,802.40. The affidavit further states that, since September 15, 2015, the Village has received no payments on the lease. However, on one occasion, Smith offered a check for $1000, but that was less than one month's rent, which the Village refused to accept.

¶ 7    On October 23, 2019, Smith filed a motion for summary judgment, arguing that the Village failed to give him proper notice of default under the lease and failed to give him an opportunity to cure the default. In support of his motion, and in opposition to the Village's motion for partial summary judgment, Smith filed a supplemental affidavit on October 30, 2019, in which he averred as follows. Since the commencement of the lease, there have been numerous occasions that the rental payments have been delinquent, sometimes more than two years, and the Village always allowed him time to cure such delinquent rent. The Village never advised him before their attorney's letter dated December 9, 2016, that it would require strict compliance with the rental payment terms of the lease, despite its practice over almost three decades of allowing him to cure delinquent rent.

¶ 8    On November 6, 2019, the circuit court entered an order granting the Village's motion for partial summary judgment, determining that Smith was in breach of the subject lease for nonpayment of rent. The circuit court also denied Smith's motion for summary judgment and

granted the Village's motion to sever the defendant's counterclaim. On November 25, 2019, the Village filed a motion for summary judgment as to its entitlement to possession of the premises, as well as to an award of money damages. As to money damages, the motion asserted that Smith was then 51 months in arrears on rent and requested "damages in the amount of $74,340.15, for reasonable attorney fees, and for [Smith] to vacate the property by December 7, 2019, and for any and all relief that is just." In support of its motion, the Village submitted the affidavit of its clerk, who attested that, as of December 2016, rent was in arrears in the amount of $23,802.40 and no payments had been made since September 15, 2015. Although Smith filed a response to this motion, he filed no counteraffidavits.

¶ 9    The hearing on the Village's motion for summary judgment was continued for many months, and presumably, this was at least partially due to the COVID-19 pandemic. On July 2, 2020, the circuit court set a hearing on all pending motions. Prior to that hearing, the Village submitted another affidavit in support of its motion for summary judgment. In that affidavit, the Village clerk averred as follows:

> "Smith is currently $86,001.35 in arrears. That is in excess of 59 months. In the case of a holdover tenant, the lease calls for double rent to be paid after the date of termination. The total amount owed with the incorporation of the double rent provision is $148,680.30."

¶ 10    On July 29, 2020, Smith filed an affidavit in opposition to the Village's motion for summary judgment, again providing testimony regarding the parties' past practice of giving Smith an opportunity to cure rent delinquencies and stating that the Village always gave him a 30-day written notice if the rent was delinquent and allowed him the ability to cure. Smith also averred that, on or before March 4, 2020, the Village installed a locked cable across the road on the leased premises, thereby preventing his access to the leased premises and his ability to operate said premises and produce income. Further, Smith averred that the Village had been removing dirt from

4

the leased premises. After a hearing on the motion for summary judgment on July 30, 2020, the Village filed a computation of the damages. This calculation shows a total of all rent due and begins to add double rent to the total for payments due from January 2017 to July 2020, showing a total of $148,680.30.

¶ 11 On August 3, 2020, the circuit court entered an order granting the Village's motion for summary judgment and entering a judgment in favor of the Village in the amount of $148,680.30. The order further required Smith to turn over possession of the property to the Village before August 6, 2020. On August 25, 2020, Smith filed a notice of appeal.

¶ 12                                    II. ANALYSIS

¶ 13 Smith raises several issues on appeal, which we will address as necessary to this disposition.

¶ 14                        A. Summary Judgment in Favor of the Village

¶ 15 We first turn our attention to the issue of whether summary judgment in favor of the Village was proper. "Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43. "Where a case is decided through summary judgment, our standard of review is *de novo*." *Id.* "A defendant moving for summary judgment bears the initial burden of proof." *Siegel Development, LLC v. Peak Construction LLC*, 2013 IL App (1st) 111973, ¶ 109. "The defendant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing that there is an absence of evidence to support the nonmoving party's case." (Internal quotation marks omitted.) *Id.* "Where a plaintiff has moved for summary judgment, the materials relied upon must establish the validity of the plaintiff's factual

5

position on all the contested elements of the cause of action." *Beltran*, 2013 IL App (1st) 121128, ¶ 43.

¶ 16                                    1. Breach of Lease/Eviction

¶ 17    In his brief on appeal, Smith makes one argument as to why the circuit court erred in granting the Village's motion for a partial summary judgment on the issue of Smith's breach of the lease. According to Smith, summary judgment as to this issue was improper because when the Village sent him a letter in December 2015 purporting to terminate the lease for nonpayment, the Village had a history of routinely accepting late payments. According to Smith, because the Village never gave him notice that it intended to insist on strict compliance with the lease, the circuit court erred in finding that, as a matter of law, Smith was in default on the lease for nonpayment of rent. Smith's argument misses a fundamental distinction between the present case and the sole case he cites as authority for the proposition that he was not in breach of the lease.

¶ 18    In *Sixeas v. Fogel*, 253 Ill. App. 579, 580 (1929), the parties entered into a lease agreement that allowed the lessor to terminate the lease for, *inter alia*, late payment of rent. Although rent was due on the first of each month, the lessee paid in the middle of the month for three months, and the lessor accepted payment. *Id.* at 581. The following month, the lessee attempted to tender the full rent in the middle of the month, and the lessor refused it. *Id.* The lessor then gave the lessee notice that it planned to terminate the lease and later instituted a forcible entry and detainer action due to the lessee's late payment of the rent. *Id.* The circuit court found in favor of the lessee, and the appellate court affirmed. *Id.* at 581-82. The court reasoned that before declaring a forfeiture, the lessor was required to give the lessee notice of his intention to insist upon strict compliance with the terms of the lease that referenced the time the rent should be paid. *Id.* at 581.

¶ 19    Here, the circuit court entered a partial summary judgment against Smith declaring him to be in breach of the lease, not for late tender of rent, but rather, for *nonpayment* of the rent. This is

6

not a case, such as *Sixeas*, where the lessor refused to accept late tender of rent and declared a forfeiture despite its past practices. Smith does not present evidence that he ever tendered the amounts due for rent to the Village, other than a $1000 check that was less than one month's payment, which the Village refused. See *Lehndorff USA (Central) Ltd. v. Cousins Club, Inc.*, 40 Ill. App. 3d 875, 879 (1976) (a lessee must tender all rent owing to the lessor, and a tender of any less sum is nugatory and ineffective (citing *Leary v. Pattison*, 66 Ill. 203 (1872))). Accordingly, we find that *Sixeas* is not applicable and the circuit court did not err in finding that Smith was in breach of the lease for nonpayment of rent.

¶ 20    In addition, we find that the Village had a statutory right to bring an action for possession of the premises based on the amount of time Smith was arrears on rent. Section 9-204 of the Code of Civil Procedure (735 ILCS 5/9-204 (West 2016)) provides that a landlord may institute an action in ejectment without any formal demand, where one-half year's rent is in arrears and unpaid. For these reasons, we affirm that portion of the judgment that awarded the Village possession of the premises.

¶ 21                                  2. Money Damages

¶ 22    Having found that the circuit court did not err when it granted the Village possession of the premises, we turn to that portion of the circuit court's August 3, 2020, order that entered a money damage award of $148,680.30. We begin by noting that, incredibly, Smith raises no issue as to the propriety of the remedies afforded the Village before this court and did not raise any issues regarding the damage calculation in the circuit court. Accordingly, Smith has forfeited these issues. See *Huang v. Brenson*, 2014 IL App (1st) 123231, ¶ 22 (failure to raise an issue in the trial court generally results in forfeiture of that issue on appeal); see also Ill. S. Ct. R. 341(h) (eff. Oct. 1, 2020) (points not argued in brief on appeal are forfeited). However, forfeiture is a limitation on the parties and not on the appellate court. *Jill Knowles Enterprises, Inc. v. Dunkin*, 2017 IL App

7

(2d) 160811, ¶ 22. As such, we can overlook forfeiture and address an issue when it is necessary to obtain a just result or to maintain a sound body of precedent. *Id.*

¶ 23   This court has multiple concerns regarding the propriety of the damages awarded by the circuit court in this case. First, a significant portion of the award is based on a double rent provision in the lease that the Village did not mention in any of the pleadings. The first time it was raised was in an affidavit in support of summary judgment that was filed in July 2020. Second, the double rent provision in the lease is ambiguous,[1] and there are questions of fact in the record as to the date on which Smith would be considered a "holdover" tenant such that the double rent provision would apply, if at all. In addition, the record raises fact issues as to whether the Village took possession of the property earlier than July 2020, based on testimony presented in Smith's affidavit regarding the Village's activities on the property in the spring and summer of 2020. The Village did not submit counteraffidavits as to these factual issues raised by Smith's affidavit.

¶ 24   In addition to the foregoing, this court is most troubled by the Village's failure to file an affidavit in compliance with Illinois Supreme Court Rule 222(b) (eff. Jan. 1, 2011). Rule 222(b) provides as follows:

> "Any civil action seeking money damages shall have attached to the initial pleading the party's affidavit that the total of money damages sought does or does not exceed $50,000. If the damages sought do not exceed $50,000, this rule shall apply. Any judgment on such

---

[1]The double rent provision is contained under a heading in the lease entitled "Possession at Termination" and reads as follows:

> "Notwithstanding any provision of law, or any judicial decision to the contrary, no notice shall be required to terminate the term of this Lease as herein provided, and the term of this Lease shall expire on the termination date herein mentioned, without notice being required from either party. In the event that Lessee or any party holding under Lessee shall remain in possession of the leased premises beyond the expiration of the terms of this Lease, whether by limitation or termination or forfeiture, such tenancy shall be from month to month and such party occupying the leased premises shall pay double rent hereunder during such holdover period."

claim which exceeds $50,000 shall be reduced posttrial to an amount not in excess of $50,000. Any such affidavit may be amended or superseded prior to trial pursuant to leave of court for good cause shown, and only if it is clear that no party will suffer any prejudice as a result of such amendment. Any affidavit filed hereto shall not be admissible in evidence at trial." *Id*.

¶ 25   Here, the Village never filed an affidavit indicating whether the total of money damages it sought from Smith exceeded $50,000, as required by Rule 222(b). Likewise, neither the *ad damnum* clause in the complaint nor the first amended complaint contain a statement that the Village sought damages in excess of $50,000. Finally, this case was docketed as an LM case, which indicates that it was a case seeking $50,000 or less. See *Grady v. Marchini*, 375 Ill. App. 3d 174, 179 (2007). The Village filed a motion for summary judgment, indicating for the first time that it was seeking damages greater than $50,000, in November 2019, and the affidavit of its clerk invoking the double damages provision in the lease and seeking $148,680.30 in July 2020. However, even if these filings could be construed as affidavits pursuant to Rule 222(b), the Village neither sought leave of court nor made a showing of good cause or a lack of prejudice to Smith as Rule 222(b) requires.

¶ 26   Additionally, we find that the Village could not make a showing of good cause or a lack of prejudice to Smith for it to amend its pleadings to seek more than $50,000 under the facts of this case. This is due primarily to its failure to raise the double rent provision in any of its pleadings, but also to the amount of time the Village took to bring its claim to judgment, due, in part to the COVID-19 pandemic. Accordingly, we find that the Village was precluded from recovering more than $50,000 from Smith and Rule 222(b) requires the judgment be reduced to $50,000. See *id.* at 178. Pursuant to Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we may modify the circuit court's judgment to reflect the proper amount of damages. *Paulson v. County of De Kalb*,

9

268 Ill. App. 3d 78, 83 (1994). Because it is necessary to a just result in this case, we modify the judgment to $50,000.

¶ 27                                  B. Remaining Issues

¶ 28                                  1. Severance of Counterclaim

¶ 29     Smith argues that the circuit court erred in severing his counterclaim from the Village's forcible entry and detainer action. "The granting of a motion for severance is within the sound discretion of the trial court, and this court will not reverse its determination unless such discretion has been manifestly abused." *Needy v. Sparks*, 51 Ill. App. 3d 350, 356 (1977).

¶ 30     "A forcible entry and detainer proceeding is a summary statutory action to adjudicate possession rights and should not be burdened by other matters unrelated to the issue of possession." *People ex rel. Department of Transportation v. Walliser*, 258 Ill. App. 3d 782, 788 (1994).

"The types of claims which Illinois courts have found to be germane to the issue of possession generally fall into one of four categories: (1) claims asserting a paramount right of possession [citation]; (2) claims denying the breach of any agreement vesting possession in plaintiff [citation]; (3) claims questioning the validity or enforceability of the document upon which plaintiff's right to possession is based [citation]; and (4) claims questioning a plaintiff's motivation for the bringing of the forcible action [citation]." *Sawyier v. Young*, 198 Ill. App. 3d 1047, 1054 (1990).

Additionally, section 2-614(b) of the Code of Civil Procedure (Code) provides that the "court may, in its discretion, order separate trial of any causes of action, counterclaim or third-party claim if it cannot be conveniently disposed of with the other issues in the case." 735 ILCS 5/2-614(b) (West 2018). Also, section 2-1006 of the Code provides that "[a]n action may be severed *** as an aid to convenience, whenever it can be done without prejudice to a substantial right." *Id.* § 2-1006. "The judge's discretion is to be exercised in each case by an appraisal of administrative

10

convenience and the possibility of prejudice to substantial rights of the litigants in the light of the particular problems which will arise in the course of the trial." *In re Estate of Lemke*, 203 Ill. App. 3d 999, 1001 (1990). "A court of review will not reverse the trial court's determination unless such discretion has been manifestly abused." *Id.* We find no abuse of discretion in this case.

¶ 31 Smith's counterclaim alleges that the Village violated an agreement it had with the State of Illinois by failing to fulfill certain obligations required under that agreement. The counterclaim seeks monetary damages as a result of these alleged failures to fulfill obligations under that agreement. The action brought by the Village is one of forcible entry and detainer, which examines the parties' possession rights to property. Smith's counterclaim in no way addresses the issue of who has the right to possession of the subject property. The counterclaim does not seek possession of the property or allege how any violation of that agreement would affect a determination of possession of the property. Whether the Village failed to follow an agreement it made with the State of Illinois does not clarify any issues as to breach of the lease between Smith and the Village. Thus, it was reasonable for the circuit court to decide to sever the counterclaim that had no bearing on the forcible entry and detainer action to avoid any possible confusion that could arise with attempting to litigate two separate claims before a jury. Further, the counterclaim was not stricken but only severed and to our knowledge is still pending in the circuit court of St. Clair County.

¶ 32 Importantly, Smith makes no substantive argument as to the propriety of the motion but, instead, argues that the motion is untimely. However, it is well established that "the circuit court has broad discretion in setting and extending the deadlines for the filing of pleadings." *Miller v. Consolidated R. Corp.*, 173 Ill. 2d 252, 259-60 (1996). Smith failed to articulate any manner in which he was prejudiced by the allowance. In fact, because the motion was filed just the day prior to the trial setting date, the circuit court continued the trial in order to allow Smith to have sufficient time to respond and to avoid any prejudice during the actual trial.

11

¶ 33                    2. Order Striking Smith's Affirmative Defenses

¶ 34    We decline to address the issue of whether the circuit court erred in granting the Village's motion to strike Smith's affirmative defenses because even if the circuit court had not stricken the affirmative defenses, summary judgment would have been proper on the issue of Smith's breach of the lease agreement for the nonpayment of rent. Moreover, nothing pled in the affirmative defenses could impact our decision in this case with regard to damages. Finally, the majority of the allegations set forth in Smith's affirmative defenses were presented by Smith in his motion for summary judgment. As such, any error in striking the defenses would not affect the outcome on appeal.

¶ 35                    3. Order Granting the Village's Motion *in Limine*

¶ 36    We decline to address the issue regarding the circuit court's order granting the Village's motion *in limine* because it does not impact our determination that summary judgment for the Village is proper and therefore does not affect our disposition.

¶ 37                          III. CONCLUSION

¶ 38    For the foregoing reasons, we affirm the August 3, 2020, order of the circuit court of St. Clair County but modify the money damages award to $50,000.

¶ 39    Affirmed as modified.

**No. 5-20-0257**

| | |
|---|---|
| **Cite as:** | *Village of New Athens v. Smith*, 2021 IL App (5th) 200257 |
| **Decision Under Review:** | Appeal from the Circuit Court of St. Clair County, No. 17-LM-2190; the Hon. Kevin T. Hoerner, Judge, presiding. |
| **Attorneys for Appellant:** | Kurt S. Schroeder, of Greensfelder, Hemker & Gale, P.C., of Belleville, for appellant. |
| **Attorneys for Appellee:** | Ted W. Dennis and Daniel E. Heil, of Freeark, Dennis, Murphy & Moskop, P.C., of Belleville, for appellee. |

13