NOTICE

Decision filed 06/29/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250421-U

NO. 5-25-0421

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| PINE AVENUE APARTMENTS, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Coles County. |
| | ) | |
| v. | ) | No. 24-EV-113 |
| | ) | |
| JESSICA FITZSIMMONS, | ) | Honorable |
| | ) | Mark E. Bovard, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CLARKE delivered the judgment of the court.
Justices Barberis and Bollinger concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the trial court's eviction order as it was not against the manifest weight of the evidence to order the defendant to pay damages to the plaintiff.

¶ 2    The plaintiff, Pine Avenue Apartments, LLC, filed for eviction against Jessica Fitzsimmons, the defendant, after providing her with a notice of non-renewal of lease or termination of tenancy on June 20, 2024. The defendant was ordered to vacate the premises and to pay the plaintiff damages to the premises and unpaid rent. For the following reasons, we affirm.

¶ 3                                  I. BACKGROUND

¶ 4    On January 1, 2017, the defendant signed a one-year lease agreement for "2509 Pine 9A Mattoon, IL" (the premises). The lease included that after the one-year lease agreement ended, the tenancy would continue on a month-to-month basis until either party provided one month's

advance notice to terminate the agreement. The rent was $480 a month, and the late fee for rent payment was $5 a day. The plaintiff filed an eviction complaint on July 24, 2024, requesting possession of the premises and unpaid rent. The lease agreement and the June 20, 2024, notice of non-renewal of lease or termination of tenancy were attached to the complaint.[1] The notice stated that the defendant's tenancy of the premises would end on August 1, 2024, and provided more than 30 days notice to vacate.

¶ 5    The matter proceeded to a bench trial on September 11, 2024. The defendant represented herself *pro se* throughout the proceedings. The plaintiff first called Ervin Kaufman, who testified that he was an employee of the plaintiff and was familiar with the "administration, maintenance, upkeep, and general purchase arrangement and acquisition" of the premises. He stated that the plaintiff purchased the premises from Janice and Jim Moritz, thereby acquiring the tenants and the assignments of rent for the premises. Kaufman testified that the lease that was attached to the eviction complaint was a true and accurate copy of the lease agreement. The defendant made her last rent payment around June 1, 2024, and her rent was "paid up" through June. She did not pay rent for July, August, and September. Kaufman provided the defendant with the notice of termination on June 20, 2024, informing her she needed to vacate by August 1, 2024. The defendant informed the plaintiff in July that she would not vacate by that date, and the plaintiff then filed the eviction complaint.

¶ 6    The defendant then testified on her own behalf. The defendant first confirmed that she received the notice of non-renewal on June 20, 2024. The defendant was then questioned by the trial court as to why the plaintiff "should not be given possession of the property at this time." In

---

[1]The notice listed the address as "2505 Pine Avenue" unit number 9, which is a different address than that on the lease. During the bench trial, however, the parties agreed that the notice and lease referred to the same residence.

response, the majority of the defendant's testimony concerned a prior grant she received to pay her unpaid rent through June 2024 which will not be recited here as it is not relevant on appeal. As a result of the grant, the plaintiff dismissed a prior court proceeding against the defendant.[2] The trial court repeatedly questioned the defendant about payments for the relevant period of July through September 2024 because the prior payments and agreement were not pertinent to the present case. The defendant appeared to mistakenly believe that the grant payment agreement applied to future rent collection and property possession. The trial court ultimately granted the plaintiff possession of the premises, but reserved the issue of damages until the plaintiff was able to assess damages and total the amount owed in unpaid rent.

¶ 7     The matter proceeded to a hearing on damages on April 23, 2025. The plaintiff called Sumil Gharu, the sole manager and member of Pine Avenue Apartments, LLC. He testified regarding the lease agreement between the parties, including the rent amount and the month-to-month term. Gharu stated that he was present on June 20, 2024, when the defendant was given the non-renewal notice. The defendant vacated the premises on October 6, 2024, through police enforcement, and she did not pay rent from July through October, when she vacated. Gharu testified that the condition of the premises "smelled so bad" due to urine from rabbits, dogs, and cats. The defendant lived in the unit for "a long time" but never permitted any of the plaintiff's employees to access the premises for repairs. As a result of the damage, the carpet and subfloors had to be removed and replaced, appliances and fixtures had to be replaced, and holes in the wall had to be repaired. The repairs cost $5,200 in materials and $3,000 in labor. Gharu also incurred costs for removal of all the defendant's personal items because she left everything in the premises.

---

[2]The previous case was Coles County case No. 24-SC-238, which was ultimately dismissed due to a payment of $5,500 from the Illinois Housing Development Authority. This payment covered the defendant's rent through June 2024.

¶ 8    The defendant then testified on her own behalf. The trial court inquired as to her unpaid rent for July, August, September, and into October. The defendant again referenced the prior grant payment that occurred before the present eviction proceedings. She provided proof of one payment from Mattoon Township for $425 on August 22, 2024. Upon inquiry by the court, Gharu stated he was unsure which month the payment covered and would have to check his accounts to verify it. After discussing rent payments prior to the eviction proceeding, the defendant confirmed that she vacated the premises on October 6, 2024, and left her personal belongings behind. The defendant stated that she did not damage the apartment, but it was from another individual who abused her. She testified that she did have animals inside, including rabbits, cats, and a service dog. The defendant claimed that the damage to the premises resulted from a roof leak that the plaintiff failed to correct. When the trial court specifically questioned the defendant as to the damage to the floors from the urine, the defendant stated, "[The premises] had been abandoned for a long time. And the roaches that they didn't spray for; and the food left in the fridge." She stated that she left the food in the fridge.

¶ 9    The plaintiff asked for unpaid rent for July, August, September, and six days of October. The plaintiff requested damages of $6,821.19, which was the cost of the materials and unpaid rent, minus the $425 payment from Mattoon Township. The defendant argued that she owed the plaintiff nothing because she "did everything in [her] power" to prevent eviction and tried to address issues on the premises.

¶ 10    The trial court found that the defendant did not pay rent for July, August, September, or October. The trial court awarded the plaintiff rent for the entire month of October for the time of the repairs, minus the $425 payment, for a total of $1,495. For the repairs to the premises including

materials and labor, the trial court awarded $8,200. The judgment was $9,695 for unpaid rent and repairs, plus $311 in court costs, totaling $10,006.

¶ 11                                    II. ANALYSIS

¶ 12    The defendant filed a notice of appeal on May 19, 2025. The defendant filed a brief on appeal, and it is not a model of clarity. The defendant appears to argue that the trial court erred in ordering her to pay damages to the plaintiff because her ex-boyfriend caused the damages and she used grant programs to pay her unpaid rent, thereby alleging a miscarriage of justice.

¶ 13    Illinois Supreme Court Rule 341 sets forth the format and contents of appellate briefs. Ill. S. Ct. R. 341 (eff. Oct. 1, 2020); *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 8. Compliance with the rules is mandatory, even for a *pro se* litigant. *Id*. Furthermore, this court may, in its discretion, strike a brief and dismiss an appeal for the failure to comply with the applicable rules of appellate procedure. *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 77.

¶ 14    The defendant's opening brief violates all the Rule 341(h) requirements. Rule 341 details the requirements for an appellant's brief, including a table of contents, introductory paragraph, statement of the issues presented for review, a statement of jurisdiction, statutes involved, a statement of facts, argument, and conclusion. Ill. S. Ct. R. 341(h)(1-8) (eff. Oct. 1, 2020). The defendant's brief fails to comply with every required section of Rule 341. Rule 341(h)(6) requires that the appellant include a "Statement of Facts, which shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). The defendant inserted information into the "Statement of Facts" section of the brief, but it failed to include citations to the record and did not present the facts necessary to understand the

5

case accurately or fairly. It contains numerous claims that were not argued before the trial court, let alone on the record on appeal, and nothing is supported by the record.

¶ 15 In addition, Rule 341(h)(7) requires the appellant to present reasoned argument and citation to legal authority and to specific portions of the record in support of her claim of error. Ill. S. Ct. R. 341(h)(7). This rule is especially important because when reviewing a case, the appellate court starts with the presumption that the circuit court's ruling was consistent with the law and the facts. See *Behrstock v. Ace Hose and Rubber Co.*, 147 Ill. App. 3d 76, 86 (1986) (observing that "it is well settled that all reasonable presumptions are in favor of the action of the trial court."); *In re Alexander R.*, 377 Ill. App. 3d 553, 556 (2007) (noting the general and well-established principle of appellate review that the circuit court knows and follows the law). The appellant bears the burden of overcoming that presumption. *Behrstock*, 147 Ill. App. 3d at 86. Moreover, it is well established that appellate courts " 'are entitled to have the issues clearly defined, [and] to be cited pertinent authorities.' " *Northwestern Memorial Hospital v. Sharif*, 2014 IL App (1st) 133008, ¶ 20 (quoting *In re Estate of Kunz*, 7 Ill. App. 3d 760, 763 (1972)).

¶ 16 The defendant included information under the "Points and Authorities" section, but failed to cite to any laws, rules, or cases to support her argument. The defendant included general statements such as, "theft & fraud. Assault & or battery," but provides no additional information or citations. The defendant failed to present any legal argument in support of her claim. The appellate court is "not a depository in which the burden of argument and research may be dumped." *Holzrichter*, 2013 IL App (1st) 110287, ¶ 80.

¶ 17 The defendant's brief does not articulate any cohesive legal argument for our consideration and fails to comply with all the requirements set forth in Rule 341, including an accurate and supported statement of facts, coherent issues presented on appeal, or an argument section with

6

citations. The defendant's failure to comply with Rule 341 results in the forfeiture of her arguments on appeal. *Beneficial Illinois Inc. v. Satterfield*, 2013 IL App (1st) 122470-U, ¶ 35 (citing *First National Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 211 (2007)).

¶ 18 Forfeiture, however, "is a limitation on the parties and not on the appellate court." *Village of New Athens v. Smith*, 2021 IL App (5th) 200257, ¶ 22. When it is necessary to obtain a just result or to maintain a sound body of precedent, we may overlook forfeiture. *Id.* As such, we choose, in the interest of a just result, to evaluate the defendant's claims on their merits.

¶ 19 The defendant's argument is that the trial court erred in ordering her to pay damages and unpaid rent for the premises. The standard of review for determining whether the trial court erred in entering an eviction order is whether the ruling was against the manifest weight of the evidence. *Wendy & William Spatz Charitable Foundation v. 2263 North Lincoln Corp.*, 2013 IL App (1st) 122076, ¶ 27.

¶ 20 During the hearings in this case, Gharu, the manager of Pine Avenue Apartments, LLC, testified that when the defendant vacated the premises, it was damaged due to urine. The urine was so extensive that all the carpets had to be removed, and the subfloor had to be fully replaced. The plaintiff also had to pay for the removal of the defendant's personal belongings from the premises because the defendant left them. The appliances also had to be replaced, specifically the fridge, because food was left in it. In addition to the repairs and labor costs, the defendant did not pay her rent for July, August, September, or the first six days of October before she vacated. While one payment was made from Mattoon Township for $425, the record does not contain any additional information about payments for the rent during that time.

¶ 21 The record supports the damages ordered by the trial court. The defendant claims that the damage was from her ex-boyfriend. Aside from one statement by the defendant during her

7

testimony, there was no evidence presented as to how her ex-boyfriend damaged the premises or what damages he caused. However, Gharu testified that the damage was caused by animal urine on the floor and by other holes in the wall. The defendant testified that she did have animals in the home, including rabbits, cats, and a service dog. This was despite the lease containing a term prohibiting pets on the premises. The defendant also admitted that she left her personal belongings on the premises, including food in the fridge, which led to its replacement. The order for unpaid rent excluded the $425 payment from Mattoon Township, and no further evidence was provided that the defendant paid her rent from July until October. All the evidence presented belies the defendant's argument.

¶ 22    Due to the evidence presented during the hearings, it was not against the manifest weight of the evidence for the trial court to order the defendant to pay the plaintiff damages.

¶ 23                                III. CONCLUSION

¶ 24    For the reasons stated above, we affirm the decision of the trial court.

¶ 25    Affirmed.